

# ARKANSAS COURT OF APPEALS

DIVISIONS I, II & III
No. CV-14-1095

| | |
|---|---|
| WENDY JONES AND LYNN GANGEMELLA<br><br>APPELLANTS<br><br>V.<br><br><br>TED DOUGLAS, INDIVIDUALLY, AND JOHN PAUL MORRISON, INDIVIDUALLY, AND D/B/A POLYMERS, INC.<br>APPELLEES | Opinion Delivered SEPTEMBER 16, 2015<br><br>APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. CV-08-704-II]<br><br>HONORABLE VICKI SHAW COOK, JUDGE<br><br><br>AFFIRMED IN PART; REVERSED IN PART |

**KENNETH S. HIXSON, Judge**

Appellants Wendy Jones and Lynn Gangemella appeal the September 5, 2014 order setting aside a default judgment entered against appellees Ted Douglas and John Paul Morrison, in their individual capacities and d/b/a Polymers, Inc., and they appeal the November 18, 2014, order dismissing the case with prejudice. Appellants sued appellees alleging breach of contract and fraudulent misrepresentation in connection with the sale of a residence. When appellees failed to answer the complaint, appellants moved for and were granted a default judgment. Years later, appellees filed a motion to set aside the default judgment followed by a motion to dismiss the case with prejudice. Each motion was granted by the circuit court. Appellants argue on appeal that the circuit court erred in setting aside the default judgment against appellees and further compounded the error by entering an order

SLIP OPINION

dismissing the case with prejudice. We affirm the trial court's setting aside of the default judgment. We reverse the trial court's dismissal of the complaint with prejudice; the dismissal should be without prejudice.

*Facts*

Ted Douglas ("Douglas") and John Paul Morrison ("Morrison") owned a residence located at 200 Bafanridge, Hot Springs, Arkansas ("the residence"). Douglas and Morrison also owned a corporation known as Polymers, Inc. ("Polymers"). In 2005, Douglas and Morrison purchased property in Turrialba, Costa Rica, with the intent to move there. In October 2005, Douglas and Morrison sold the Hot Springs residence to appellants, Jones and Gangemella. Prior to closing, appellants engaged the services of Robert Bedford, individually and d/b/a Robert Bedford Home Inspection Service ("Bedford"), to perform a home inspection. The purchase price of the residence was $345,900. Appellants borrowed approximately $330,000 from Summit Bank and conveyed a first mortgage to the bank. Appellants borrowed $13,000 from Polymers (the corporation owned by Douglas and Morrison) and executed a promissory note and second mortgage in favor of Polymers. In 2006, Douglas and Morrison moved to Costa Rica.

Appellants began experiencing significant water drainage problems with the residence, and in June 2008, appellants filed a lawsuit in Garland County Circuit Court. Appellants sued Douglas, Morrison, and Polymer, alleging that they fraudulently failed to disclose, or failed to properly repair, certain defects in the residence. Appellants alleged in the complaint that Douglas and Morrison were individual residents of Turrialba, Costa Rica, and that they "were

2

and are d/b/a Polymers, Inc."[1]  Appellants sued Bedford alleging that he was negligent in performing his home inspection.[2]

On June 3, 2008, the Circuit Clerk of Garland County issued three summonses: one summons was addressed to "Ted Douglas, Apdo #23, CATIE, Costa Rica, 7170"; one summons was addressed to "John Paul Morrison, Apdo #23, CATIE, Costa Rica, 7170"; and one summons was addressed to "Polymers, Inc., Apdo #23, CATIE, Costa Rica, 7170."[3] Each summons incorrectly stated that the defendant therein had twenty days to respond to the complaint or a default judgment may be entered against him.[4]  The attorney for appellants attempted to serve each of the three defendants/appellees individually by registered mail, return receipt requested, in accordance with Arkansas Rule of Civil Procedure 4(8)(i) (2008). According to the Affidavit of Return of Summons and the attachments thereto filed by appellants' attorney, the attorney mailed a copy of the complaint and summons to each of the three appellees.  The attorney utilized a United States Postal Service Return Receipt for

---

[1]By the time the complaint was filed, the corporation had been revoked by the Arkansas Secretary of State.  The registered agent for this revoked Arkansas corporation was appellee John Paul Morrison, whose address was listed as 200 Bafanridge Street in Hot Springs.  Polymers's officers included appellee Ted Douglas (president) and appellee John Paul Morrison (vice president and secretary).

[2]The claim against Bedford was dismissed by the appellants and is not a part of this appeal.

[3]"Apdo" is a Spanish abbreviation for post office box.  "CATIE" is an abbreviation for Cento Agronomico Tropical de Investigacion y Ensenanza, which translates to Center for Tropical Agricultural Research and Education.

[4]When the summons was prepared in 2008, an in-state defendant had twenty days to answer a complaint, but a defendant "not residing in this State" had thirty days to file an answer pursuant to Arkansas Rule of Civil Procedure 12(a)(1) (2008).

International Mail form and a United States Postal Service Customs Declaration form. Each of the three envelopes was returned to the appellants' attorney with a Costa Rican postal form marked "rehusado," which is Spanish for "refused." Thereafter, appellants' attorney sent a first-class mailing to appellees, which was never returned. Appellants' attorney also stated in the Affidavit that appellants were going to "run a warning order in the [Hot Springs] Sentinel Record."[5]

On September 5, 2008, appellants moved for default judgment against each appellee due to the failure to respond to the complaint. On September 9, 2008, the circuit court entered an order granting default judgment for the full contract price of the residence—$345,900—plus attorney fees, costs, and postjudgment interest. Thereafter, appellants served one writ of garnishment on Summit Bank, collecting $225 from a bank account belonging to Polymers.

In 2012, Douglas and Morrison moved back to Garland County, Arkansas. Appellants continued to attempt to collect on the judgment by filing writs of garnishment. The collection efforts proved unsuccessful. In July 2014, an attorney for appellees filed a motion to set aside the default judgment alleging that each summons was defective on its face in that each summons stated that the defendant had twenty days to respond instead of the thirty days required by the Rule. Simultaneously, appellees filed a motion to quash garnishments that had been filed by appellants attempting to collect on the judgment.

---

[5]It was undisputed that appellants' attorney did not "run a warning order in the Sentinel Record."

Appellants responded, stating that appellees maintained business and personal connections with Arkansas at all times and were presently living in Hot Springs; that process was served on appellees when they refused the mailed documents; that any purported error in perfecting service was harmless; and that setting aside the default judgment would be wholly unjust and would reward the conscious efforts of appellees to avoid service of process.

On August 25, 2014, the circuit judge issued a letter opinion setting aside the default judgment. The circuit judge found that while appellees "were served with summons and complaint in 2008," appellees were not Arkansas residents in 2008, and that the summons erroneously stated that appellees had twenty days instead of thirty days within which to answer and defend. Due to this fatal defect in the summonses, the trial court was lacking personal jurisdiction over appellees, which voided the default judgment against them. A formal order, incorporating the letter opinion, was filed of record in September 2014.[6]

After the default had been set aside and after the garnishments had been quashed, appellees filed a motion to dismiss the case with prejudice. Appellees explained their residency in Costa Rica from 2006 until 2012 and appended affidavits to support that they were Costa Rican residents in 2008. Appellees' affidavits further swore that they did not refuse nor did they ever receive the summons and complaint. They provided a Costa Rican attorney's affidavit to establish that the Costa Rican postal service is inherently unreliable.

---

[6]The writs of garnishment were set aside on August 27, 2014, for reasons unrelated to this appeal.

 

Appellees added that because no service was ever completed on them, appellants were not entitled to the benefit of Arkansas' savings statute and dismissal should be with prejudice.

Appellants responded that they had provided substantial evidence of refusal of this restricted mail; that appellants used the same Costa Rican mailing address that appellees undeniably used for years; and that complaints about the reliability of the Costa Rican postal service were unsupported, conclusory statements.

In November 2014, the trial court entered an order dismissing appellants' case with prejudice. The court found that appellants were not entitled to the benefit of Arkansas' savings statute, Arkansas Code Annotated section 16-56-125, due to a failure to "complete service of process" on appellees within 120 days of the complaint being filed. A timely notice of appeal followed.

On appeal, appellants contend that the trial court erred when it (1) set aside the default judgment; and (2) dismissed the complaint with prejudice instead of without prejudice. We affirm as to the first argument but reverse as to the second argument. It is paramount to appreciate the distinction between the two issues on appeal. The first issue (setting aside a default judgment) involves the proper review for service of process; however, the second issue (dismissing the case with prejudice) involves the proper review for application of the savings statute. These are two separate and distinct issues.

*The Order to Set Aside the Default Judgment*

The first point on appeal is whether the trial court erred in setting aside the default judgment. A circuit court acquires no jurisdiction over a defendant unless the plaintiff strictly

complies with the service-of-process rules. *Simmons Ltd. Partnership v. Finch*, 2010 Ark. 451, 370 S.W.3d 257; *Cagle v. Terwilliger*, 2015 Ark. App. 191. Strict compliance specifically applies to the technical requirements of a summons. *Smith v. Sydney Moncrief Pontiac, Buick, GMC Co.*, 353 Ark. 701, 120 S.W.3d 525 (2003). A defendant's personal knowledge of the litigation does not cure a fatal defect in the summons. *Earls v. Harvest Credit Mgmt. VI-B, LLC*, 2015 Ark. 175, 460 S.W.3d 795. This court reviews a circuit court's factual conclusions regarding service of process under a clearly-erroneous standard, and when dismissal is a matter of law, the court conducts a de novo review of the record. *McMahan v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 590, 446 S.W.3d 640.

Appellants argue that appellees failed to prove they were no longer residents of Arkansas when service of process was mailed to them and that the trial court erred in finding that appellees' residence was out of state in 2008. We disagree and affirm this finding.

Appellants suggest that the law uses the terms "residence" and "domicile" interchangeably and mean, for purposes of jurisdictional requirements, the same thing. Appellants contend that all evidence was clear that appellees intended to return to Arkansas as their domicile. To the contrary, although the differences are subtle, residence and domicile are not the same thing. *Leathers v. Warmack*, 341 Ark. 609, 19 S.W.3d 27 (2000). A person may have several residences at one time, but he can only have one domicile. *Id.* Intent is a much greater consideration in determining one's domicile than residence. *Lawrence v. Sullivan*, 90 Ark. App. 206, 205 S.W.3d 168 (2005). Residence denotes only the act of residing. *Id.*

We hold that the trial court did not clearly err in finding that appellees were not residents of Arkansas in 2008 but rather residents of Costa Rica when the complaint and summons were mailed to them. Appellees bought land in Costa Rica and moved there in 2006, setting up residence. Appellees continued to reside in Costa Rica until 2012, and they returned to Arkansas. Moreover, appellants averred in their complaint that appellees were Costa Rican residents, and Costa Rica was where the complaint and summons were sent. *See Dupwe v. Wallace*, 355 Ark. 521, 140 S.W.3d 464 (2004)(explaining judicial estoppel against taking inconsistent positions). There was no error in the trial court determination that appellees were not residents of Arkansas at the time of the lawsuit being filed and service being made.

Because we affirm the circuit court's ruling that appellees were residents of Costa Rica in 2008 when service was attempted, we hold that the circuit court did not err in setting aside the default judgment based on appellants' noncompliance with Rule 4. The summonses recited that appellees had twenty days to respond but, because they were defendants not residing in Arkansas at that time, the summonses should have stated that they had thirty days after service to answer. *See* Ark. R. Civ. P. 12(a)(1)(A)("a defendant not residing in this state shall file an answer within 30 days after service); *see also Trusclair v. McGowan Working Partners*, 2009 Ark. 203, at 4, 306 S.W.3d 428, 430 (holding that Rule 4(b) of the Arkansas Rules of Civil Procedure specifies, in part, that the summons shall state the time within which these rules require the defendant to appear, file a pleading, and defend and that our supreme court has established a bright-line test; the Rule's technical requirements must be construed strictly;

compliance must be exact). Substantial compliance will not do. Failure to adhere to this requirement mandated that the trial court deem the default void for want of personal jurisdiction. *See Earls*, *supra.*

Moreover, we hasten to add that appellees were entitled to have the default judgment against them set aside on a secondary basis, that being under Arkansas Rule of Civil Procedure 4(d)(8)(A)(ii). This subsection provides that any default judgment "may be set aside pursuant to Rule 55(c) if the addressee demonstrates to the court that the return receipt was signed or delivery was refused by someone other than the addressee or agent of the addressee." Appellees provided evidence to the trial court through affidavits swearing that they did not refuse, nor did they authorize any agent on their behalf to refuse, the service of process in this instance. Based on the evidence presented, we cannot say that the trial court clearly erred in this finding.

The record is clear that the appellants did not strictly comply with the service-of-process statutes and rules and, therefore, the trial court did not err in setting aside the default judgment.

*Dismissal With Prejudice vs. Without Prejudice*
*Application of the Savings Statute*

Appellants assert that, even if we affirm the setting aside of the default judgment, the circuit court erred in entering a subsequent order finding that the dismissal should be with prejudice. Appellants maintain that service was completed, perhaps defectively or improperly, but that they are entitled to the benefit of Arkansas' savings statute, which would permit them to refile the complaint and obtain proper service within one year of the order of dismissal.

*See Rettig v. Ballard*, 2009 Ark. 629, 362 S.W.3d 260; Ark. Code Ann. § 16-56-126 (Repl. 2005). We find merit to this argument.

Our savings statute is codified at Arkansas Code Annotated section 16-56-126, and it provides that if an action is "commenced" within the applicable statute of limitations, and the plaintiff suffers a nonsuit, then a new suit may be commenced within one year of the date of the dismissal. Savings statutes are remedial in nature. *Linder v. Howard*, 296 Ark. 414, 757 S.W.2d 549 (1988). These statutes reflect the legislature's intent to protect those who, having filed an action in good faith and in a timely manner, would suffer a complete loss of relief on the merits because of a procedural defect. *Id*. Before the savings statute applies, though, an action must be "commenced." Ark. Code Ann. § 16-56-126(a).

A suit is "commenced" when the complaint is timely filed and service of the complaint and summons is completed within the 120-day limit required by Arkansas Rule of Civil Procedure 4. *Rettig, supra*. A trial court's later ruling that completed service is invalid will not disinherit the plaintiff from the benefit of the savings statute, which is in line with the equitable and liberal construction that must be given the savings statute. *Forrest City Machine Works, Inc v. Lyons*, 315 Ark. 173, 866 S.W.2d 372 (1993); *see also* Newbern & Watkins, *Arkansas Civil Practice and Procedure* § 5.10 (5th ed. 2010).

Thus, the narrow issue becomes whether service, albeit imperfect, was "completed." Our supreme court requires, at the very least, a valid attempt to complete service in order to invoke the savings statute. *McCoy v. Montgomery*, 370 Ark. 333, 259 S.W.3d 430 (2007). Undoubtedly, if the only defect herein was the twenty-day versus thirty-day time limit to

answer, then the dismissal would have to be without prejudice according to the holding in *Rettig, supra.* However, here we have an additional potential defect in that appellants may not have strictly complied with the restricted delivery mailing requirements in Rule 4. Our question, therefore, is whether the evidence in the record detailing the timely attempts by appellants to serve process on appellees constitutes completed service to trigger the savings statute. We hold that, under the facts of this case, appellants completed service on appellees and are, therefore, entitled to the beneficent purposes of the savings statute.

For service outside Arkansas, Rule 4(e) (2008) provides that service may be made "when reasonably calculated to give actual notice" by mail as provided in Rule 4(d)(8). According to Arkansas Code Annotated section 16-58-132, where service of summons, process, or notice is provided by registered or certified mail, and the addressee "refuses to accept delivery, and it is so stated in the return receipt of the United States Postal Service, the written return receipt, if returned and filed in the action, shall be deemed an actual and valid service of the summons, process, or notice."

Here, the summonses and complaints were mailed to appellees at their last known address in Costa Rica by using a United States Postal Service form for Return Receipt for International Mail. The form indicated that the envelope was a registered article, and the envelope indicated "return receipt requested." Appellants also utilized a United States Postal Service form for Customs Declaration. Appellants assert that when the summonses and complaints were "refused," service was then and there "completed" as provided for by

11

Arkansas Code Annotated section 16-58-132 and the Arkansas Rule of Civil Procedure.

Arkansas Rule of Civil Procedure 4(d)(8)(A)(i) and (ii) (2008) provide in pertinent part:

> Service of a summons and complaint upon a defendant . . . may be made . . . by any form of mail addressed to the person to be served with a return receipt requested and delivery restricted to the addressee or the agent of the addressee.
>
> . . . .
>
> Service pursuant to this paragraph (A) shall not be the basis for the entry of a default or judgment by default unless the record contains a return receipt signed by the addressee or the agent of the addressee or *a returned envelope, postal document* or affidavit by a postal employee *reciting or showing refusal of the process* by the addressee. If delivery of mailed process is refused, the plaintiff or attorney making such service, promptly upon receipt of notice of such refusal, shall mail to the defendant by first class mail the copy of the summons and complaint and a notice that despite such refusal the case will proceed and the judgment by default may be rendered against him unless he appears to defend the suit. (Emphasis added.)

When the envelopes containing the complaints and summonses were returned to appellants' attorney, each envelope was imprinted with a Costa Rican postal service stamp that contained several options for delivery. Each envelope had an "x" marked beside the word "rehusado." Rule 4 provides that upon notice of refusal, the plaintiff must promptly send the papers by first class mail, which the plaintiffs' attorney represented to have done. Regardless of whether we deem this adequate to prove service via refusal,[7] appellants clearly made a timely attempt to serve appellees.

Our court discussed the concept of what it means to "complete" service in *Clouse v. Ngau Van Tu*, 101 Ark. App. 260, 274 S.W.3d 344 (2008). Appellants maintain that *Clouse*

---

[7]This would have been a proper and valid argument in setting aside the default judgment for insufficient service of process; but, it is not dispositive of whether service was completed for purposes of application of the savings statute.

is instructive, and we agree. The trial court, and our court in affirming the trial court, found that Ngau Van Tu's lawsuit against his former chiropractor, Dr. Lance Clouse, was commenced by Tu completing timely but defective service of his complaint and summons. The papers were delivered to the chiropractor's office but handed to the chiropractor's wife and not the chiropractor personally. We agreed with the trial judge that the defect entitled Dr. Clouse to have this lawsuit dismissed, but without prejudice to it being refiled by Tu. *Clouse*, 101 Ark. App. at 261, 274 S.W.3d at 344.

The *Clouse* opinion made clear that there are two alternatives: either there is no service at all, in which case the savings statute is not triggered; or, there is timely but imperfect service, in which case the savings statute applies. *Id.* The *Clouse* decision held that it is unimportant whether the circumstances are characterized as "attempted service or timely completed service later ruled invalid" to determine the "commencement" inquiry:

> Here the law must be practical and clear. It is: when the plaintiff completes timely service of the summons and complaint, he commences his case even if time reveals that the service was defective in some particular. . . . If the law were otherwise, the beneficent purpose of our saving statute would be thwarted.

*Id.* at 266–67, 274 S.W.3d at 348.

The supreme court held similarly in *Posey v. St. Bernard's Healthcare, Inc.*, 365 Ark. 154, 226 S.W.3d 757 (2006), stating that:

> Even though this court has interpreted the savings statute liberally, applying it in cases where a timely completed *attempt* at service was later held to be invalid, *see [Forrest City Machine Works, Inc. v. Lyons*, 315 Ark. 173, 866 S.W.2d 372 [(1993)], this court has specifically held that service of process must, at least, be timely *attempted* in order for the action to be deemed to have commenced so that the savings statute will apply. (Emphasis added.)

13

*Id.* at 165–66, 266 S.W.3d at 765. Similar support is found in Professor Brill's[8] treatise,

*Arkansas Law of Damages* § 13:9 (5th Ed.):

> The case law distinguishes between cases where no service was attempted and cases in which service was completed but defectively. At a minimum, service of process must have been timely attempted for the savings statute to be applicable. Defective service, provided it is done within the 120 period, causes a dismissal without prejudice and thus provides the shelter of the savings statute. Accordingly, a lawsuit commenced in time but dismissed because the summons was defective or service was flawed, may be filed as a new action. Thus, the savings statute is designed to permit a litigant an opportunity to correct a defect in service of process when the statute of limitations would otherwise bar the suit.

In the present appeal, with the liberal construction that the savings statute is to be given, and with appellants' service of process timely but deemed defective at a later time, we hold that appellants are entitled to a dismissal without prejudice.

The setting aside of the default judgment is affirmed. The dismissal "with prejudice" is reversed because appellants are entitled to the benefit of the savings statute and, thus, the dismissal is "without prejudice."

Affirmed in part; reversed in part.

HARRISON, KINARD, WHITEAKER, VAUGHT and HOOFMAN, JJ., agree.

GLADWIN, C.J., and VIRDEN and GRUBER, JJ., dissent.

**ROBERT J. GLADWIN, Chief Judge, dissenting.** The majority finds merit in appellants' argument that, even if we affirm the finding that the summons was defective and, thus, dismissal was proper, the circuit court erred in entering a subsequent order dismissing

---

[8]Professor Brill was recently appointed chief justice of the Arkansas Supreme Court by Governor Asa Hutchinson.

with prejudice. I disagree that service was completed, albeit improperly, and that precedent allows appellants to refile the complaint and obtain proper service within one year of the order of dismissal pursuant to *Rettig v. Ballard*, 2009 Ark. 629, 362 S.W.3d 260. Accordingly, I dissent.

In David Newbern & John J. Watkins, *Arkansas Civil Practice and Procedure* § 5.10 (4th ed. 2006), the authors state that the savings statute permits a plaintiff to commence a new action, and that the savings statute applies if a "timely, *completed* attempt at service is made but later held to be invalid." *Id*. at 102–04 (emphasis added). The savings statute permits a new commencement of the action, in effect, an opportunity to correct a dismissal without prejudice by timely service of valid process when the statute of limitations would otherwise bar the suit.

The majority relies on *Clouse v. Tu*, 101 Ark. App. 260, 274 S.W.3d 344 (2008), which held that Ngau Van Tu's lawsuit against his former chiropractor, Dr. Lance Clouse, was commenced by Tu completing timely but defective service of his complaint and summons. This court held that the defect entitled Dr. Clouse to have this case dismissed, but without prejudice to it being refiled by Tu. *Clouse*, 101 Ark. App. at 261, 274 S.W.3d at 344.

I disagree with appellants' application of *Clouse* because here, service was neither made on, nor refused by, appellees within the statute of limitations. It is appellants' burden to demonstrate compliance with the service rules, not appellees' burden to prove noncompliance. *McMahan v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 590, 446 S.W.3d 640.

Where service is made by mail, the plaintiff's burden is to prove that the mailed service was received or affirmatively refused by the addressee or an agent authorized to receive mail in accordance with U.S. Postal Service regulations. *Valley v. Helena Nat'l Bank*, 99 Ark. App. 270, 259 S.W.3d 461 (2007).

As recently as March 18, 2015, this court has held that a circuit court acquires no jurisdiction over a defendant unless the plaintiff strictly complies with the service and process rules. *Cagle v. Terwilliger*, 2015 Ark. App. 191; *accord Rettig*, *supra*. Strict compliance with process rules includes issuing a summons that apprises the defendant of the correct time to respond and completing service of that summons and complaint within the window set out by Arkansas Rule of Civil Procedure 4 (2014). If a statute of limitations lapses after a complaint has been filed and the plaintiff does not complete service in the time Rule 4 allows, dismissal with prejudice is proper because the action never commenced and is now time-barred. *Cagle*, 2015 Ark. App. 191, at 3–5. A dismissal based on a Rule 4 error is not unique. This case differs from the typical Rule 4 dismissal case only because the circuit court had to resolve disputed factual questions about the residency of appellees and their alleged refusal of service.

I do not agree that the circuit court clearly erred in relying on sworn affidavits from appellees Douglas and Morrison that they did not refuse mailed service or authorize anyone else to refuse it for them. Evidence indicates that the complaint and summons were sent to a post-office box at an agricultural college in a third-world country 1800 miles from Hot Springs, Arkansas, more than two years after appellees had moved to rural Costa Rica.

Appellees did not check the post-office box themselves; their farm manager did. Appellees did not appoint anyone as an agent under U.S. Postal Service regulations for receiving restricted mail or ask anyone to refuse mail on their behalf. Accepting those statements as true, as the circuit court was entitled to do under Arkansas Rule of Civil Procedure 43(c) (2014), even a "refusal" of the mail by someone with access to the box could not have qualified as completed service. *Meeks*, *supra*. Although appellants produced three envelopes marked "rehusada," "refused," by an unnamed Costa Rican postal employee, those envelopes do not indicate who refused or the circumstances surrounding that action.

Regarding the argument that service on appellees was completed by refusal, rather than acceptance of restricted-delivery mail, this is similar to *Brown v. Arkansas Department of Human Services*, 2013 Ark. App. 201. The defendant-appellant in *Brown* objected in circuit court that he had not signed the green card showing service of a petition. The court of appeals agreed that service had not been established and reversed the circuit court's order terminating his parental rights. This court held that in order "to validate its effort under Rule 4, the Department of Human Services had to establish that whoever signed the green card at the Penninger Drive address was Brown's authorized agent for service." *Id*. at 4–5. It presented no such evidence, and its attempted service fell short of the Rule 4 requirements.

Here, appellants likewise failed to provide evidence that appellees themselves refused service or that whoever refused service was appellees' authorized agent for service. Accordingly, their "completed attempted service" falls short of the requirements of Rule 4.

VIRDEN and GRUBER, JJ., join.

17



*Jonathan D. Jones*, for appellants.

*Ludwig Law Firm, PLC*, by: *Ryan K. Culpepper*; and *The Cruz Law Firm, PLC*, by: *Kathy A. Cruz*, for appellees.