LARRY D. VAUGHT, Judge
Jason Hearst appeals the Pulaski County Circuit Court's order granting summary judgment to appellee Robert Newcomb and dismissing Hearst's legal-malpractice lawsuit against Newcomb. We affirm.
*311 On June 13, 2010, Hearst was arrested in Faulkner County after Mayflower police officer[1] Billy Baker responded to a 911 call placed by Hearst's wife reporting domestic abuse. Baker instructed a deputy to take Hearst to the Faulkner County Detention Center despite Hearst's protests that he could not go to jail because he suffers from Crohn's disease, has a medical port in his chest, and is highly susceptible to infection.[2] Hearst was jailed, suffered an infection following his detention, and hired attorney Robert Newcomb to represent him in pursuing a civil rights lawsuit against Baker pursuant to the Arkansas Civil Rights Act, Arkansas Code Annotated sections 16-123-101, et seq. (Repl. 2006), and the Arkansas Constitution. Hearst sought compensatory and punitive damages, alleging that he had incurred medical expenses and suffered emotional distress as a result of Baker's actions. Baker answered, denying the claims and asserting the defense of statutory immunity.
Baker filed a motion for summary judgment on December 12, 2012. Newcomb failed to file a response on behalf of Hearst. On February 6, 2013, Hearst filed a motion under Rule 41 of the Arkansas Rules of Civil Procedure requesting that his suit be dismissed without prejudice. Hearst states that Newcomb told him that he was voluntarily nonsuiting the case in order to obtain a new judge. An order was entered the same day granting Hearst's motion to voluntarily nonsuit the case without prejudice. Also on February 6, 2013, Baker responded to the dismissal motion, arguing that it should be denied and that summary judgment should be granted in his favor based on Hearst's failure to respond to Baker's summary-judgment motion. In the alternative, Baker requested that Hearst be required to reimburse him for all costs associated with the case and that any refiling be stayed until such costs were paid. On March 25, 2013, the court entered an amended order of dismissal vacating its earlier dismissal order and denying Hearst's motion. The court then granted Baker's summary-judgment motion and dismissed the suit with prejudice.
On April 18, 2013, Hearst filed a timely notice of appeal. On appeal he argued that the court erred in vacating his dismissal order and dismissing his suit with prejudice. We found no error and affirmed in Hearst v. Baker , 2014 Ark.App. 214, 2014 WL 1327883.
Hearst then filed a legal-malpractice lawsuit against Newcomb on March 10, 2016, alleging negligent representation in the civil-rights claim. After conducting discovery,[3] Newcomb moved for summary judgment, arguing that Hearst's malpractice suit was barred by the statute of limitations, and Hearst could not prevail on his negligence claim as a matter of law. After a hearing, the circuit court granted summary judgment on both grounds. As to the statute of limitations, the court found that Arkansas Code Annotated section 16-56-105 provides for a three-year statute of limitations for legal-malpractice claims, that the statute begins to run on the date of the negligent act, which was January 7, 2013 (the date on which Hearst's response to Baker's motion for summary judgment *312 was due), and that even if the statutory period is tolled during the period of time that the nonsuit order was in effect (as Hearst argues it should be), Hearst's complaint was still filed beyond the statutory period. The court also found that Hearst had failed to present evidence supporting fraudulent concealment, which he argued should further toll the statute of limitations.[4]
The law is well settled regarding the standard of review used by this court in reviewing a grant of summary judgment. Crockett v. C.A.G. Invs., Inc. , 2011 Ark. 208, at 7, 381 S.W.3d 793, 798 (citing Bryan v. City of Cotter , 2009 Ark. 172, 303 S.W.3d 64 ). A circuit court will grant summary judgment only when it is apparent that no genuine issues of material fact exist requiring litigation and that the moving party is entitled to judgment as a matter of law. Id. The burden of proof shifts to the opposing party once the moving party establishes a prima facie entitlement to summary judgment; the opposing party must demonstrate the existence of a material issue of fact. Id. After reviewing the undisputed facts, the circuit court should deny summary judgment if, under the evidence, reasonable minds might reach different conclusions from the same undisputed facts. Id. On appeal, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party leave a material question of fact unanswered. Id. This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. Id. This review is not limited to the pleadings but also includes the affidavits and other documents filed by the parties. Id.
To prevail on an attorney-malpractice claim in Arkansas, the plaintiff must show that he or she suffered damages proximately caused by the defendant's negligence, meaning that the plaintiff must show that but for the attorney's alleged negligence, the result would have been different in the underlying action. Callahan v. Clark , 321 Ark. 376, 386, 901 S.W.2d 842, 847 (1995) ; Ark. Kraft v. Cottrell , 313 Ark. 465, 855 S.W.2d 333 (1993). In Arkansas, an attorney is negligent if he or she fails to exercise reasonable diligence and skill on behalf of his or her client. Id. ; Welder v. Mercer , 247 Ark. 999, 448 S.W.2d 952 (1970).
On appeal, Hearst argues that the circuit court erred in granting summary judgment in favor of Newcomb based on its finding that his claim was filed after the statute of limitations had expired because there were questions of fact as to whether Newcomb's actions should have tolled the statute of limitations. The statute of limitations for attorney-negligence cases is three years. Parkerson v. Lincoln , 347 Ark. 29, 61 S.W.3d 146 (2001). Absent fraud or concealment, the statutory period begins to run on the date of the negligent act. Delanno, Inc. v. Peace , 366 Ark. 542, 545, 237 S.W.3d 81, 84 (2006) (citing Goldsby v. Fairley , 309 Ark. 380, 831 S.W.2d 142 (1992) ). Fraud on the part of the defendant can suspend the running of the statute of limitations, and the suspension remains in effect until the party having the cause of action discovers the fraud or should have discovered it by the exercise of reasonable diligence. Delanno , 366 Ark. at 545, 237 S.W.3d at 84. In order to toll *313 the statute of limitations, the fraud perpetuated must be concealed. Id. Fraud consists of (1) a false representation of a material fact, (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation, (3) intent to induce action or inaction in reliance upon the representation, (4) justifiable reliance on the representation, and (5) damage suffered as a result of the representation. Id. Hearst argues that Newcomb fraudulently concealed the true deadline for Hearst's attorney-malpractice suit by telling Hearst that he had until March 19, 2016, to file the claim. The circuit court analyzed this argument and rejected it, finding no evidence that Newcomb knew that his statement was false and intended for Hearst to rely on it to his detriment.
Hearst has not demonstrated that this finding was erroneous; he has not cited any evidence that Newcomb knew that the date he provided to Hearst was incorrect and did so with the intent to mislead Hearst into missing the filing deadline for his malpractice suit. Moreover, we note that Hearst cannot prove that he justifiably relied on Newcomb's statement as to the exact date on which the statute of limitations would expire because justifiable reliance requires proof that Hearst exercised reasonable diligence in relying on Newcomb's assertion. Here, Hearst asserts that it was reasonable for him to have relied exclusively on Newcomb's off-the-cuff statement as to the deadline for filing his malpractice claim despite the fact that the lawsuit hinged entirely on Hearst's contention that Newcomb is a negligent lawyer who egregiously erred by missing an important filing deadline. Finally, Hearst admitted in a response to an interrogatory propounded by Newcomb that by late January 2014, Hearst had consulted a second attorney, James Lane, who reviewed Hearst's civil-rights suit, explained to him why it was dismissed, and further explained that this court had denied his request for appellate relief.
In Delanno , the Arkansas Supreme Court held that even in cases where fraud is found, the plaintiff has the burden to "prove that the fraud would not have been detected by the exercise of reasonable diligence." 366 Ark. at 547, 237 S.W.3d at 85. Given that Hearst sought additional legal advice related to this matter, we cannot say that any misrepresentation by Newcomb regarding the statute of limitations "would not have been detected by the exercise of reasonable diligence." Our standard for establishing fraudulent concealment speaks to concealment that is "so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed." Carlson v. Kelso Drafting & Design, Inc. , 2010 Ark. App. 205, at 3, 374 S.W.3d 726, 728 (citing Curry v. Thornsberry , 354 Ark. 631, 128 S.W.3d 438 (2003) ). Here, the applicable statute of limitations is a matter of public law and is easily discoverable, as is the date on which the statute began to run. We therefore disagree with Hearst's argument that the circuit court's finding that Hearst had failed to allege facts constituting fraudulent concealment was reversible error.
Hearst next argues that the statute of limitations should be tolled for the forty-one-day period during which the circuit court's order granting Hearst's motion for voluntary dismissal without prejudice was in effect. He relies on Stroud v. Ryan , 297 Ark. 472, 763 S.W.2d 76 (1989), in which an attorney failed to file his client's response to a writ of garnishment, and as a result the client was held liable by default judgment. In Stroud , the circuit court then entered a nunc pro tunc order setting aside the default judgment and entered *314 judgment in favor of the client. The circuit court's nunc pro tunc order, which alleviated the attorney's negligence, remained in place until it was reversed on appeal. In the subsequent attorney-malpractice case, the Arkansas Supreme Court held that the statute of limitations was tolled for the period in which the circuit court's nunc pro tunc order setting aside the default was in effect because the client had no cognizable malpractice claim (because he could not have shown any injury) until the order was reversed on appeal.
The Arkansas Supreme Court distinguished Stroud in Goldsby and explained that the appellants' malpractice action in Goldsby had never ceased to exist from the time the appellee attorney had prepared a warranty deed in 1980 and misrepresented that the appellants had a first mortgage on the subject property. 309 Ark. 380, 831 S.W.2d 142. In Goldsby , appellants were not aware of the misrepresentation until 1985 when they suffered a business loss as a result of the alleged misrepresentation. This court held that the three-year statute of limitations barred appellants' 1986 malpractice suit and explicitly rejected their argument that, under Stroud , the statute of limitations should be tolled until the appellants suffered damages as a result of the negligence.
In Ragar v. Brown, 332 Ark. 214, 964 S.W.2d 372, (1998), the Arkansas Supreme Court examined both cases and held:
The distinguishing factor in both Stroud and Pope County [v. Friday, Eldredge & Clark , 313 Ark. 83, 852 S.W.2d 114 (1993) ] was the judgment entered in favor of the appellant. Here, as in Goldsby , there was no intervening judgment in Appellant's favor; hence, her malpractice claim never ceased to exist. At a minimum, Appellant was alerted to her claims for actionable negligence when the bankruptcy court entered the disqualification and the fraudulent-conveyance orders against her. Unlike Stroud , there was no point where Appellant was prevented from bringing suit. We are therefore not persuaded by Appellant's argument that accrual of her action was delayed; her alleged damages were evident through the trial court's adverse rulings, affirmed on appeal, and thereby never ceased to exist.
Ragar , 332 Ark. at 221, 964 S.W.2d at 375-76.
Newcomb argues that the statutory period should not be tolled during the forty-one-day period that the circuit court's voluntary-dismissal order was in place and that Stroud is distinguishable because the circuit court's voluntary-dismissal order in the present case was not akin to a "judgment entered in favor of the appellant," as was the case in Stroud , and did not prevent Hearst from bringing his attorney-malpractice claim during the pendency of that voluntary-dismissal order.[5]
Both arguments miss the mark. Here, the circuit court applied Stroud and found that even if the statute of limitations had been tolled for the forty-one-day period, Hearst's malpractice claim was still untimely. Specifically, the court found that Newcomb's alleged negligence occurred on January 7, 2013, the date when Hearst's response to Baker's motion for summary judgment was due, and that even if the *315 statutory period was tolled by the circuit court's voluntary-dismissal order, which was in effect between February 6 and March 19, 2013, Hearst's malpractice complaint, filed on March 10, 2016, was filed more than three years and forty-one days after the negligent act. Despite making numerous legal arguments on appeal as to why the statute of limitations should be tolled in this case, Hearst does not challenge the circuit court's simple mathematical calculation that, even if the statute of limitations had been tolled pursuant to Stroud , "Plaintiff should have brought his claim within three years and forty-one days" but "failed to bring his claim within the tolled statute of limitations period under Stroud analysis."
To the extent that Hearst also argues that the statute of limitations should be tolled for the full pendency of his appeal of the underlying civil-rights lawsuit, he cites no authority nor does he make any persuasive legal argument that would support this position. While the Stroud court held that the statute of limitations for filing an attorney-malpractice claim was tolled until an appellate court reversed the circuit court's nunc pro tunc order setting aside the default judgment, the operative issue was not the appeal process but the existence of the underlying nunc pro tunc order and subsequent legal judgment in the client's favor negating the attorney's negligence until the appellate court's reversal of those orders. In Ragar , supra , the Arkansas Supreme Court specifically explained that "[t]he majority of jurisdictions considering this context, regardless of the applicable rule,[6] holds that a pending appeal by the damaged party does not serve to toll the statute of limitations when damages can be presently identified." Ragar , 332 Ark. at 221, 964 S.W.2d at 376 (citing Gulf Coast Inv. Corp. v. Brown , 813 S.W.2d 218 (Tex. 1991) (holding that under the discovery rule, the statute of limitations accrued at the time an adverse proceeding was filed against the plaintiff, not when the circuit court rendered final judgment against the plaintiff) ). Hearst has not argued that his damages were nonexistent or unidentifiable prior to the final resolution of his appeal, and we see no basis for reversal on this ground in light of the Arkansas Supreme Court's clear guidance in Ragar .
Finally, in his last argument challenging the circuit court's finding that his claim was barred by the statute of limitations, Hearst argues that Newcomb should be estopped from raising the statute of limitations as a defense because Newcomb misinformed Hearst as to when the statute would expire. Because Hearst neither affirmatively pled estoppel pursuant to Rule 8 of the Arkansas Rules of Civil Procedure nor raised the issue to the circuit court in response to Newcomb's summary-judgment motion, we cannot address it on appeal. Electro-Air v. Villines , 16 Ark. App. 102, 697 S.W.2d 932 (1985) (we will not entertain an argument raised for the first time on appeal). As a result, we find no error in the circuit court's finding that Hearst's attorney-malpractice claim was barred by the statute of limitations and affirm the court's grant of summary judgment on this basis.
Affirmed.
Whiteaker and Murphy, JJ., agree.

Although the briefs repeatedly refer to Baker as the police chief, Baker's abstracted testimony simply describes him as the "arresting officer." Baker's rank at the time of the arrest is unclear from our record but is immaterial to the issues presented for our review.

There was conflicting testimony about whether and to what extent Hearst told Baker about his medical conditions and his susceptibility to infection.

Hearst claims that discovery was incomplete.

Hearst stated that Newcomb had incorrectly told him that he had until March 19, 2016, to file his malpractice claim. The court found that, even if true, Newcomb's actions did not amount to fraudulent concealment because there was no evidence of "secretive, furtive, or deceptive action designed to conceal."

We note that, as an appellee who filed neither a notice of appeal nor a notice of cross-appeal, Newcomb's argument that the circuit court erred in applying the tolling analysis in Stroud to the case at bar is not properly before us. Moreover, as the prevailing party below, he has already obtained relief in the form of dismissal of Hearst's malpractice lawsuit. See Banks v. Barton , 2018 Ark. App. 523, 2018 WL 5636349 (citing Washington Cty. Reg. Med. Ctr. v. Nw. Physicians, LLC , 2018 Ark. App. 497, 562 S.W.3d 239 ).

The court was comparing the occurrence rule, under which the statute starts to run from the date of the negligent act, to the damage rule, under which the statute starts to run as soon as damages from the negligence accrue. Arkansas utilizes the occurrence rule.