MIKE MURPHY, Judge
Appellant Manuel Bail Bond Co., Inc. (Manuel) appeals from the Pulaski County Circuit Court's order granting the summary-judgment motion of appellee Hosto & Buchan, PLLC (the law firm), which was entered on November 7, 2017. Manuel also appeals from the December 12, 2017 order denying its motion for reconsideration and to vacate, alter, and amend judgment. On appeal, Manuel argues that the circuit court erred in (1) granting summary judgment in favor of the law firm, (2) dismissing Manuel's complaint for an accounting, and (3) granting summary judgment on Manuel's claim for declaratory judgment. We affirm.
I. Procedural History and Background
In November 2010, Manuel, which was formerly in the business of writing bail bonds, entered into a debt-collection-service agreement with the law firm, a firm that provides debt collection services. The law firm filed numerous lawsuits on behalf of Manuel and obtained default judgments. Manuel notified the law firm by email that it wished to terminate the services of the law firm on November 12, 2013. The law firm responded by email that it would prepare the files, and it notified Manuel of a $15,000 balance due the firm for the advancement of court costs by the law firm to file the cases on behalf of Manuel. Manuel never received the judgments collected by the law firm, but the firm assured Manuel that the money collected on was used as a credit toward Manuel's account with the firm.
On April 23, 2015, the Arkansas Supreme Court decided Earls v. Harvest Credit Management VI-B, LLC , 2015 Ark. 175, 460 S.W.3d 795. Earls involved the law firm as a party. There, the supreme court explained that the summons form the law firm had been using was defective because it incorrectly stated that an incarcerated person in the state had thirty days, instead of sixty days, to file an answer. The law firm had been using the same summons form at issue in Earls in pursuing debts on behalf of Manuel. In a deposition, Bryan Hosto (a partner in the law firm) testified that of 318 judgments obtained in Arkansas on behalf of Manuel he could only exclude eighteen judgments from being affected by the Earls decision. In an affidavit, Hosto stated that the last defective summons used by the law firm was filed on July 25, 2011.
On November 1, 2015, Manuel filed suit stemming from the law firm's service of voidable summonses on Manuel's behalf.
*545 [1] Manuel specifically sued for breach of contract and negligence and sought damages in the amount of the default judgments and for costs. Manuel also demanded an accounting for all amounts expended and received by the law firm. Lastly, Manuel sought declaratory judgment for indemnity for any future claim against it arising from the defective summonses used and void judgments obtained. The law firm answered and following discovery, filed a motion for summary judgment based on statute-of-limitations grounds. The motion explained that the claim against the law firm was based on an allegation that the law firm had filed defective summonses on behalf of Manuel. The law firm argued the suit is untimely because the time in the statute of limitations should have started running from the date the last defective summons was used, which was on July 25, 2011. Manuel argued that the April 23, 2015 holding of Earls should be the proper date. A hearing on the motion was conducted on October 31, 2017.
On November 7, 2017, the circuit court entered summary judgment in favor of the law firm finding that all of Manuel's claims were barred by the controlling statute of limitations and that there was no tolling of the statute. Manuel filed a timely motion for reconsideration and to vacate, alter, and amend judgment, and it was denied by court order. Manuel then filed a timely notice of appeal.
II. Standard of Review
The law is well settled regarding the standard of review used by this court in reviewing a grant of summary judgment. Crockett v. C.A.G. Invs., Inc. , 2011 Ark. 208, at 7, 381 S.W.3d 793, 798. A circuit court will grant summary judgment only when it is apparent that no genuine issues of material fact exist requiring litigation and that the moving party is entitled to judgment as a matter of law. Id. The burden of proof shifts to the opposing party once the moving party establishes a prima facie entitlement to summary judgment; the opposing party must demonstrate the existence of a material issue of fact. Id. After reviewing the undisputed facts, the circuit court should deny summary judgment if, under the evidence, reasonable minds might reach different conclusions from the same undisputed facts. Id. On appeal, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party leave a material question of fact unanswered. Id. This court views the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. Id. This review is not limited to the pleadings but also includes the affidavits and other documents filed by the parties. Id.
III. Summary Judgment for Negligence
To prove negligence in Arkansas, the plaintiff must show that he or she suffered damages proximately caused by the defendant's negligence. Callahan v. Clark , 321 Ark. 376, 386, 901 S.W.2d 842, 847 (1995). To show damages and proximate cause in a legal-malpractice action, the plaintiff must show that but for the alleged negligence, the result would have been different in the underlying action. Hearst v. Newcomb , 2018 Ark. App. 73, 542 S.W.3d 191. In Arkansas, an attorney is negligent if he or she fails to exercise reasonable diligence and skill on behalf of the client. Id.
On appeal, Manuel argues that the circuit court erred in granting summary *546 judgment in favor of the law firm based on its finding that Manuel's claim was filed after the statute of limitations had expired. Manuel asserts that there were questions of fact as to whether the statute should have been tolled. Arkansas Code Annotated section 16-56-105 (Repl. 2005) provides for a three-year statute-of-limitations period from the accrual of actions. Hill v. Hartness , 2017 Ark. App. 664, at 5, 536 S.W.3d 649, 652. The statutory limitations period begins to run when there is a complete and full cause of action and, in the absence of concealment or wrong, when the negligence occurs and not when it is discovered. Riggs v. Thomas , 283 Ark. 148, 671 S.W.2d 756 (1984). Arkansas has adhered to this now-minority occurrence rule in legal-malpractice cases since 1877. Chapman v. Alexander , 307 Ark. 87, 817 S.W.2d 425 (1991). Under the occurrence rule, the malpractice action accrues when the "last element essential to the cause of action" occurs, unless the attorney actively conceals the wrongdoing. Id. at 88, 817 S.W.2d at 426. Our supreme court recognizes this is a harsh rule, Flemens v. Harris , 323 Ark. 421, 915 S.W.2d 685 (1996), but the rationale is to prevent attorneys from having to defend stale claims, to preserve evidence, and to treat all plaintiffs equally. Chapman , 307 Ark. 87, 817 S.W.2d 425.
In Pope County v. Friday, Eldredge & Clark , 313 Ark. 83, 852 S.W.2d 114 (1993), Friday, Eldredge & Clark ("Friday Law Firm") was the defendant in a legal malpractice case and had served as counsel for Pope County on a bond issue. The validity of the bond issue was challenged, and the circuit court held that the bond issue was validly presented to the voters; it also made other rulings in favor of Pope County. It was only on appeal that the supreme court held the issue was invalid. Id. at 84, 852 S.W.2d at 114-15. When Pope County asserted a legal-malpractice claim against the Friday Law Firm, the statute-of-limitations defense was asserted as a complete defense. The circuit court agreed and granted summary judgment in favor of the Friday Law Firm. On appeal, the Arkansas Supreme Court reversed and held that the statute of limitations was tolled during the period between the circuit court's order holding the bond issue valid and the time that the appeal was decided that reversed the circuit court. Id. at 84, 852 S.W.2d at 115-16.
In Pope County , the supreme court relied primarily on Stroud v. Ryan , 297 Ark. 472, 763 S.W.2d 76 (1989). In Stroud , an attorney was sued for professional negligence after he failed to timely respond to a writ of garnishment, and a default judgment was entered against his client. The attorney was later successful in having the circuit court vacate the default judgment. On appeal, the order vacating the default judgment was reversed. When a claim was brought against the attorney for professional negligence, he successfully asserted a statute-of-limitations defense in the circuit court. On appeal, the supreme court held that the statute-of-limitations period was tolled between the time the circuit court erroneously set aside the default judgment and the order on appeal that reversed the circuit court's order and vacated the default judgment.
Manuel argues that under the rationale of Pope County and Stroud there is a tolling of the statute of limitations between the time that the judgments were obtained and the decision in the Earls case was handed down on April 23, 2015. Manuel asserts that the intervening event or court action that created this malpractice action against the law firm is the Earls case itself and that Manuel had no malpractice case to assert against the law firm *547 prior to the Earls decision. Manuel is incorrect.
In the cases above, the tolling is from the circuit court's decision setting aside and eliminating the negligent act/malpractice event until it is reinstated by the appellate court mandate. Our case is more on par with Goldsby v. Fairley , 309 Ark. 380, 831 S.W.2d 142 (1992), and Ragar v. Brown , 332 Ark. 214, 964 S.W.2d 372 (1998). In Ragar , the supreme court examined both cases and held,
This court distinguished Stroud when it decided Goldsby , 309 Ark. 380, 831 S.W.2d 142, and explained that the appellants' malpractice action in Goldsby had never ceased to exist from the time the appellee attorney had prepared a warranty deed in 1980 and misrepresented that the appellants had a first mortgage on the subject property. Appellants were not aware of the misrepresentation until 1985 when they suffered a business loss as a result of the alleged misrepresentation. This court held that the three-year statute of limitations barred appellants' 1986 malpractice suit and explicitly rejected the damage rule.
The distinguishing factor in both Stroud and Pope County was the judgment entered in favor of the appellant. Here, as in Goldsby , there was no intervening judgment in Appellant's favor; hence, her malpractice claim never ceased to exist. At a minimum, Appellant was alerted to her claims for actionable negligence when the bankruptcy court entered the disqualification and the fraudulent-conveyance against her. Unlike Stroud, there was no point where Appellant was prevented from bringing suit. We are therefore not persuaded by Appellant's argument that accrual of her action was delayed; her alleged damages were evident through the trial court's adverse rulings, affirmed on appeal, and thereby never ceased to exist.
Ragar , 332 Ark. at 221, 964 S.W.2d at 375-76
Similarly, here, at no point was Manuel prevented from bringing suit because the defective-summonses claim was always there; the Earls case merely brought attention to the fact. As previously explained, Arkansas calculates statute-of-limitations onset as the date of the negligent act and not the date that the act was discovered. It was always negligent for the law firm to be using a defective summons, and Manuel's claim never ceased to exist. Manuel is wrong when it characterizes the action that created the malpractice suit as the Earls case itself-the action that created the malpractice claim was the use of the defective summonses that had not been approved for use since 2011.
IV. Summary Judgment for Breach of Contract
Next, Manuel alleges that the circuit court erred in finding that Manuel's claim sounded in negligence, and consequently, the cause of action was barred by the three-year statute of limitations. Rather, Manuel argues its claim sounded in contract and was thus subject to the five-year statute of limitations, making the cause of action timely. Manuel asserts that the law firm breached specific promises it made in the written debt-collection agreement. Manuel explains that the agreement it entered into with the law firm may have involved elements of legal representation, but it also involved services of a debt collector. Manuel states, "The specific promises made were promises made by a debt collection company and the breach of such promises were breaches by a debt collector." The law firm counters that Manuel is simply attempting to disguise his legal-malpractice claim as a contract *548 claim when, in fact, the "gist" of the overall complaint is clearly a legal-malpractice claim.
When determining which statute of limitations to apply in a case, the court must look to the facts alleged in the complaint itself to ascertain the area of law in which they sound. Sturgis v. Skokos , 335 Ark. 41, 977 S.W.2d 217 (1998). Generally, if two or more statutes of limitations apply to a cause of action, generally the statute with the longest limitation period will be applied. Kassees v. Satterfield , 2009 Ark. 91, 303 S.W.3d 42. However, this court must look to the "gist" of the action to determine which statute of limitations to apply. Id. Although Manuel attempts to categorize his claim differently, the claim Manuel uses to frame its complaint-the "gist" of the claim-is legal malpractice. Accordingly, the three-year statute of limitations that applies to legal-malpractice actions controls. We have held, "In claims for legal malpractice, ancillary contracts for representation do not extend the three-year statute of limitations." Richardson v. Madden , 2012 Ark. App. 120, at 3-4, 2012 WL 386755 ; see also Sturgis , supra (holding that a contractual promise to act diligently did not transform the "gist" of plaintiffs' action from one for negligence into one for breach of the written agreement).
Manuel tries to support its argument by relying on Farris v. Conger , 2017 Ark. 83, 512 S.W.3d 631, and arguing that the law regarding Sturgis was substantially clarified by Farris . There, the supreme court held that a customer's breach-of-contract action against a wealth-management service provider sounded in contract rather than negligence because the complaint alleged that the provider breached the written wealth-management-services contract by failing to timely execute a transfer of funds so that funds would be available to purchase real property. This case is distinguishable because Farris does not involve a contract for legal services. Notably, the "debt collection agreement" in this case refers to legal services and a legal contract for legal services because (1) Manuel is called the "client"; (2) the amount collected is called a "contingent fee"; (3) it calls for the law firm to be "filing a lawsuit"; (4) the P.L.L.C. law firm of attorneys is referred to in the agreement as a "law firm"; (5) the document refers to amounts to be retained as including "attorney's fees"; (6) the agreement refers to the fact the law firm will provide "legal advice"; and (7) the appellee party is a law firm with attorneys. Thus, the "gist" of Manuel's complaint is that its attorney failed to send out proper summonses.
Accordingly, we hold that the debt-collection agreement was an ancillary contract for representation and that the circuit court did not err in finding that (1) the three-year statute of limitations for legal malpractice applied and barred appellant's claim and (2) appellant failed to plead a viable cause of action regarding a breach of a separate and distinct written contract.
V. Dismissal of Complaint for Accounting
Next, Manuel asserts that the circuit court erred in dismissing its claim for an equitable accounting of sums due from the law firm to Manuel. An accounting is an equitable remedy designed to provide a means for compelling one, who because of a confidential or trust relationship has been entrusted with property of another, to render an account of his actions and for the recovery of any balance found to be due. A & P's Hole-In-One, Inc. v. Moskop , 38 Ark. App. 234, 239, 832 S.W.2d 860, 863 (1992). Thus, the circuit court did not err because an equitable accounting is a remedy and not a proper *549 cause of action. See In re Estates of McKnight v. Bank of Am., N.A. , 372 Ark. 376, 380, 277 S.W.3d 173, 177 (2008) ; see also Panhandle Oil & Gas, Inc. v. BHP Billiton Petroleum (Fayetteville), LLC , 2017 Ark. App. 201, at 11, 520 S.W.3d 277, 285.
VI. Summary Judgment for Declaratory Judgment
Lastly, Manuel alleges that the circuit court erred in granting summary judgment on its claim for a declaratory judgment for indemnity. In its complaint, Manuel sought indemnity in the event of future claims brought for return of funds paid pursuant to an invalid judgment pursued and collected by the law firm. Manuel asserts that the statute of limitations cannot expire on a claim for declaratory judgment regarding a future potential claim. However, a cause of action for indemnity accrues only when the claiming party has suffered actual damages, including financial loss occasioned by the payment of money. C & L Rural Elec. Coop v. Am. Cas. Co. , 199 F.Supp. 220 (E.D. Ark. 1961). Here, Manuel has not proved that it suffered any actual damages from the defective summonses, and its claim is not ripe. Accordingly, summary judgment was proper.
Affirmed.
Whiteaker and Vaught, JJ., agree.

Manuel originally named Bryan Hosto individually as a party, but he was nonsuited.